**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| HI LIMITED PARTNERSHIP, a Florida limited partnership, HOOTERS GAMING CORPORATION, a Nevada corporation, and HOA FRANCHISING, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>115 EAST TROPICANA AVENUE OWNER SUB LP, a Nevada limited partnership; and OYO HOTELS INC., a Delaware corporation,<br><br>Defendants. | Civil Action File No. |

# COMPLAINT

Plaintiffs HI Limited Partnership ("HI LP"), Hooters Gaming Corporation, and HOA Franchising, LLC ("HOA Franchising," and collectively with HI LP and Hooters Gaming Corporation, "Hooters" or "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants 115 East Tropicana Avenue Owner Sub LP ("Owner") and OYO Hotels Inc. ("OYO Hotels," and together with Owner, "Defendants"), allege as follows:

## INTRODUCTION

1. This is an action for holdover trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), for trademark infringement and unfair competition under the common law of the State of Nevada, and for breach of contract. Defendants are the former franchisee of a HOOTERS® restaurant (the "Restaurant") located inside the hotel and casino at 115 East Tropicana Avenue, Las Vegas, Nevada 89109 (the "Property"), and the entity that operates and markets the Property as the OYO Hotel & Casino.

2. The franchise relationship ended more than a year ago. Owner issued a Notice of Non-Renewal dated August 4, 2025, franchised operations ceased on August 7, 2025, and the Franchise Agreement between HOA Franchising and Owner dated as of October 10, 2019 (the "Franchise Agreement") required that the Restaurant be fully de-identified within ten (10) days thereafter (extended by only five (5) additional days for exterior building and monument signage). In that notice, Owner promised in writing to complete de-identification, including "the removal of all signage, branding, and any other proprietary identifiers," within thirty (30) days.

3. Defendants did not do so. Despite repeated written notices beginning July 29, 2025, a Final Notice Before Litigation dated July 22, 2026, a formal demand letter dated August 21, 2026, and Owner's own written commitment to complete de-

identification "maximum by September 15, 2026," Defendants continue to display Hooters' trademarks, trade name, and trade dress described below (the "HOOTERS® Marks") on the exterior of the Property, on a "HOOTERS SALOON" marquee above the Property's main valet entrance, and on the front page of the Property's own website, https://www.oyolasvegas.com/hotel/. Defendants' ongoing use of the HOOTERS® Marks after actual notice is knowing, deliberate, and willful, and it falsely communicates to the public that the Property remains affiliated with, sponsored by, or approved by Hooters.

**THE PARTIES**

4. Plaintiff HI Limited Partnership ("HI LP") is a Florida limited partnership with its principal place of business at 107 Hampton Road, Ste. 200, Clearwater, Florida 33759. HI LP is the owner of the HOOTERS® family of federally registered trademarks, trade name, service marks, logos, and trade dress described below.

5. Plaintiff Hooters Gaming Corporation is a Nevada corporation with a registered agent in the State of Nevada at Fennemore Craig, P.C., 9275 W Russell Road, Suite 240, Las Vegas, Nevada. Hooters Gaming Corporation is the exclusive licensee of the HOOTERS® marks in connection with the conduct of gaming, casino and/or combined hotel, gaming and casino operations within the State of Nevada,

and is authorized to enforce the HOOTERS® marks in connection with those uses within the State of Nevada.

6. Plaintiff HOA Franchising, LLC ("HOA Franchising," and collectively with HI LP and Hooters Gaming Corporation, "Hooters" or "Plaintiffs") is a Delaware limited liability company with its principal place of business at 107 Hampton Road, Ste. 200, Clearwater, Florida 33759. HOA Franchising is the franchisor of HOOTERS® restaurants and is authorized to use, sublicense, and enforce the HOOTERS® marks in connection with the Hooters System.

7. Defendant 115 East Tropicana Avenue Owner Sub LP ("Owner") is, on information and belief, a Nevada limited partnership with its principal business address at 115 East Tropicana Avenue, Las Vegas, Nevada 89109, whose general partner is 115 East Tropicana Avenue Owner Sub GP, LLC. Owner owns the Property and was the franchisee under the Franchise Agreement described below.

8. Defendant OYO Hotels Inc. ("OYO Hotels," and together with Owner, "Defendants") is, on information and belief, a Delaware corporation with its principal place of business at 3232 McKinney Ave, Suite 1000, Dallas, Texas 75204. According to Owner, the Property is operated and managed by OYO Hotels. On information and belief, OYO Hotels controls the domain and website available at https://www.oyolasvegas.com/ and markets the Property to the public as the "OYO Hotel & Casino."

9. On information and belief, at all relevant times each Defendant acted as the agent, partner, or alter ego of the other, and acted in concert with and with the knowledge, consent, and approval of the other with respect to the conduct alleged herein.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over Plaintiffs' Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over Plaintiffs' state law unfair competition claims pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction over Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

11. This Court has personal jurisdiction over Defendants because Defendants agreed to the exclusive jurisdiction of this Court by virtue of their execution of the Franchise Agreement, which contains, *inter alia*, a forum selection clause designating this District and an express waiver of challenge to this venue in Section 25.3.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants agreed to this venue by virtue of their execution of the Franchise Agreement, which contains, *inter alia*, a forum selection clause

designating this District and an express waiver of challenge to this venue in Section 25.3.

## FACTUAL ALLEGATIONS

### A. Hooters and the HOOTERS® Marks

13. Hooters operates and franchises the well-known chain of HOOTERS® restaurants. HOA Franchising identifies the Hooters System by means of trademarks, trade names, service marks, logotypes, and other commercial symbols, including without limitation the mark "Hooters®," together with distinctive trade dress, décor, color schemes, and other identifying characteristics (collectively, as defined in the Franchise Agreement, the "Proprietary Marks").

14. HI LP owns the HOOTERS® family of registered trademarks, common law rights, trade name, service marks, logos, and distinctive trade dress (which, together with the Proprietary Marks, comprise the HOOTERS® Marks), including without limitation the following registrations issued by the United States Patent and Trademark Office ("USPTO"):

| Mark | U.S. Reg. No. | Reg. Date | Class(es) / Goods and Services |
|---|---|---|---|
| Full Owl Logo | 7429500 | 06/25/2024 | 43 Int. restaurant services; restaurant and bar services, including restaurant carryout services; bar services; cocktail lounge services |

| | | | |
|---|---|---|---|
| Half Owl Logo | 7429501 | 06/25/2024 | 43 Int. restaurant services; restaurant and bar services, including restaurant carryout services; bar services; cocktail lounge services |
| HOOTCLUB | 5133484 | 01/31/2017 | 09 Int. Downloadable computer software for use in conjunction with a customer loyalty rewards program |
| HOOTERS | 1590973 | 04/10/1990 | 25 Int. CLOTHING, NAMELY SWEATBANDS, SHIRTS, PANTS AND JACKETS |
| HOOTERS | 1557380 | 09/19/1989 | 42 Int. RESTAURANT AND COCKTAIL LOUNGE SERVICES |
| HOOTERS | 3590149 | 03/17/2009 | 41 Int. Casinos; Conducting and providing facilities for special events featuring casino and gaming contests and tournaments; Providing casino facilities<br><br>43 Int. Hotels; Hotel services; Hotel services for preferred customers; Hotel, bar and restaurant services; Reservation of hotel rooms for travelers; Resort hotels |
| HOOTERS | 3545791 | 12/16/2008 | 16 Int. Calendars; Magazines featuring women, waitresses, cheerleaders, swimsuits and swimsuit models, sports, comedy, gaming, travel, fitness, reviews, men's interests; Photographs; Posters; |

| | | | |
|---|---|---|---|
| | | | Stickers |
| HOOTERS | 1659704 | 10/08/1991 | 16 Int. posters, photographs, and calendars |
| HOOTERS | 1653233 | 08/06/1991 | 38 Int. entertainment services in the nature of a television program |
| Hooters | 1534320 | 04/11/1989 | 20 Int. PLASTIC KEY CHAINS<br><br>28 Int. DISC TOSS TOYS |
| HOOTERS | 3568638 | 01/27/2009 | 30 Int. Sauces |
| HOOTERS | 3831346 | 08/10/2010 | 34 Int. Cigarette lighters not of precious metal |
| HOOTERS | 3043735 | 01/17/2006 | 30 Int. breading mix |
| HOOTERS | 8070806 | 12/16/2025 | 29 Int. frozen appetizers consisting primarily of chicken; frozen appetizers consisting primarily of cheese; frozen pre-packaged entrees consisting primarily of chicken; frozen pre-packaged entrees consisting primarily of meat, fish, poultry; prepared entrees consisting primarily of meat, fish, poultry; prepared entrees consisting primarily of plant-based imitation meat; prepared entrees consisting primarily of meat, seafood, fish, or poultry; fresh and frozen appetizers consisting primarily of meat, poultry, vegetables, potatoes and cheese; frozen, prepared, |

| | | | |
|---|---|---|---|
| | | | or packaged appetizers consisting primarily of vegetables, meat and cheese; chicken wings; boneless chicken wings; breaded popcorn chicken; shrimps, not live; processed potatoes; buffalo chicken bites in the nature of chicken wings, chicken breast strips, crab cakes<br><br>30 Int. dipping sauces |
| HOOTERS & Owl Logo (B/W) | 8070807 | 12/16/2025 | 29 Int. frozen appetizers consisting primarily of chicken; frozen appetizers consisting primarily of cheese; frozen pre-packaged entrees consisting primarily of chicken; frozen pre-packaged entrees consisting primarily of meat, fish, poultry; prepared entrees consisting primarily of meat, fish, poultry; prepared entrees consisting primarily of plant-based imitation meat; prepared entrees consisting primarily of meat, seafood, fish, or poultry; fresh and frozen appetizers consisting primarily of meat, poultry, vegetables, potatoes and cheese; frozen, prepared, or packaged appetizers consisting primarily of vegetables, meat and cheese; chicken wings; boneless chicken wings; breaded |

| | | | |
|---|---|---|---|
| | | | popcorn chicken; shrimps, not live; processed potatoes; buffalo chicken bites in the nature of chicken wings, chicken breast strips, crab cakes<br><br>30 Int. dipping sauces |
| HOOTERS and Design | 1602377 | 06/19/1990 | 25 Int. CLOTHING, namely, [ SOCKS, ] SHIRTS [, PANTS, JACKETS, SHORTS, BABY BIBS, AND SUN VISORS ] |
| HOOTERS and Design (color) | 4545042 | 06/03/2014 | 43 Int. Bar services; Cocktail lounge services; Restaurant services |
| HOOTERS and Design Logo (new) | 7170213 | 09/19/2023 | 25 Int. Clothing, namely, shirts, socks, hats, sweatshirts |
| HOOTERS P/D | 7069088 | 05/30/2023 | 25 Int. Clothing, namely, jackets, shorts, baby bibs not of paper, hats, sweatshirts, sweaters, pullovers |
| HOOTERS FOODS | 7737372 | 03/25/2025 | 30 Int. sauces; chicken wing sauces; mixes for making chicken wing breading; hot sauce<br><br>35 Int. retail store services featuring sauces, chicken |

| | | | |
|---|---|---|---|
| | | | wing sauces, mixes for making chicken wing breading, hot sauce; online retail store services featuring sauces, chicken wing sauces, mixes for making chicken wing breading, hot sauce |
| HOOTERS MAKES YOU HAPPY! | 5636057 | 12/25/2018 | 43 Int. Restaurant and bar services, including restaurant carryout services |
| HOOTERS MAKES YOU HAPPY! | 5636056 | 12/25/2018 | 25 Int. Clothing, namely shirts |
| HOOTERS P/D | 1652377 | 07/30/1991 | 16 Int. calendars, posters, photographs [, magazines of general interest ] |
| HOOTERS P/D | 1320029 | 02/12/1985 | 42 Int. Restaurant and Cocktail Lounge Services |
| HOOTERS Stylized | 3484848 | 08/12/2008 | 41 Int. Casinos; Conducting and providing facilities for special events featuring casino and gaming contests and tournaments; Providing casino facilities<br><br>43 Int. Hotels; Hotel services; Hotel services for preferred customers; Hotel, bar and restaurant services; Reservation of hotel rooms for travelers; Resort hotels |

| | | | |
|---|---|---|---|
| HOOTIE'S BURGER BAR | 5819801 | 07/30/2019 | 43 Int. Restaurant services, namely, the provision of food and drink via online ordering for delivery or pick up |
| HOOTIE'S CHICKEN TENDERS | 6716627 | 05/03/2022 | 43 Int. Restaurant services, namely, the provision of food and drink via online ordering for delivery or pick up |
| HOOTS | 5187016 | 04/18/2017 | 43 Int. Bar services; Catering services; Restaurant and bar services, including restaurant carryout services; Restaurant services |
| HOOTS A HOOTERS JOINT | 5218943 | 06/06/2017 | 43 Int. Bar services; catering services; restaurant and bar services, including restaurant carryout services; restaurant services |
| HOOTS WINGS | 6352644 | 05/18/2021 | 43 Int. Bar services; Catering services; Restaurant services; Restaurant and bar services, including restaurant carryout services |
| HOOTS WINGS BY HOOTERS | 7244256 | 12/12/2023 | 43 Int. bar services; catering services; restaurant and bar services, including restaurant carryout services; restaurant services |
| HOOTS WINGS ON THE FLY | 7426331 | 06/25/2024 | 43 Int. catering services; Restaurant and bar services, including restaurant carryout services |

| | | | |
|---|---|---|---|
| HOOTSCOOP | 6919613 | 12/06/2022 | 43 Int. Providing restaurant services featuring a customer rewards program |
| I AM A HOOTERS GIRL | 6926293 | 12/13/2022 | 35 Int. Franchise services, namely, offering business management assistance in the establishment and operation of restaurants and bars; employment recruiting services<br><br>43 Int. Restaurant and bar services |
| THE ORIGINAL HOOTERS | 7737374 | 03/25/2025 | 30 Int. sauces; chicken wing sauces; mixes for making chicken wing breading; hot sauce |

15. The registrations identified above are valid, subsisting, and in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. These registrations constitute prima facie evidence of the validity of the registered HOOTERS® Marks, of HI LP's ownership of them, and of HI LP's exclusive right to use them in commerce, 15 U.S.C. § 1115(a), and constitute constructive notice of HI LP's claim of ownership, 15 U.S.C. § 1072.

16. In addition to its registered rights, Hooters owns common law rights in the HOOTERS® Marks, including the HOOTERS® name, the owl design, and the distinctive trade dress of HOOTERS® restaurants, through decades of continuous

and extensive use in commerce, including in the State of Nevada. Currently, Hooters operates over 250 locations across the globe, with nearly 150 in the United States.

17. As a result of Hooters' long and continuous use, advertising, and promotion, the HOOTERS® Marks are distinctive, are widely recognized by the consuming public, and represent extremely valuable goodwill belonging exclusively to Hooters.

**B. The Sub-License Agreement, the Franchise Agreement, and Defendant Owner's Post-Termination Obligations**

18. HOA Franchising and Owner entered into the Franchise Agreement, under which HOA Franchising granted Owner the right, subject to the Franchise Agreement, to operate a HOOTERS® restaurant using the Proprietary Marks and the Hooters System at the Restaurant, identified in the Franchise Agreement as the "Existing Hooters Restaurant" at 115 East Tropicana Avenue, Las Vegas, Nevada 89109. The Franchise Agreement was executed on behalf of Owner by its general partner, 115 East Tropicana Avenue Owner Sub GP, LLC.

19. Under Section 9.5 of the Franchise Agreement, upon termination Owner must, once directed by HOA Franchising, direct all internet service providers, domain name registries, search engines, and listing agencies to transfer or terminate internet web sites and listings associated with the franchised business, or take such other actions as HOA Franchising may direct.

20. Section 15 of the Franchise Agreement governs Owner's obligations upon termination or expiration. It provides that "[o]n termination or expiration of this Agreement for any reason, all rights granted to Franchisee under this Agreement shall immediately terminate," and that:

> (a) Under Section 15.1, Owner "shall immediately cease to operate the business franchised under this Agreement, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of HOA Franchising."
>
> (b) Under Section 15.2, Owner "shall immediately and permanently cease to use, in any manner whatsoever," the Proprietary Marks, and "shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks."
>
> (c) Under Section 15.3, Owner "shall remove or change all signs, displays, furniture, fixtures, equipment, and other trade dress, and shall change all colors of buildings and other structures, to the extent required to distinguish Franchisee's Restaurant from its former appearance and from any other Hooters Restaurants, and shall comply with HOA Franchising's restaurant de-identification requirements (collectively, to 'De-Identify' Franchisee's Restaurant), so that Franchisee's Restaurant is fully De-Identified by the end of ten (10) days after the termination or expiration of this Agreement."
>
> (d) Under Section 15.3.1, if Owner fails to timely De-Identify, HOA Franchising may enter the premises and De-Identify the Restaurant "at Franchisee's expense."
>
> (e) Under Section 15.3.2, Owner "will provide HOA Franchising with photographic or other evidence of the De-Identification satisfactory to HOA Franchising."
>
> (f) Under Section 15.4, Owner must comply with its obligations for web sites and internet listings under Section 9.5 and cancel

> any assumed name registrations containing the mark "Hooters," and "shall furnish HOA Franchising with confirmation that Franchisee has fulfilled such obligations by the end of thirty (30) days after termination or expiration."
>
> (g) Under Section 15.5, Owner "shall not, in connection with any other business, use any reproduction, counterfeit, copy, or colorable imitation of the Proprietary Marks . . . that may cause or constitute confusion, mistake, or deception," and "shall not use any designation of origin or description or representation that falsely suggests or represents an association or former association with HOA Franchising or the Hooters System."

21. Special Stipulation 54 to the Franchise Agreement extends the time for de-identification of exterior building or monument signage by only five (5) additional days. It does not shift to Hooters any obligation or cost of de-identification.

22. Hooters Gaming Corporation and Owner entered into a Trademark Sub-License Agreement dated December 23, 2019 (the "Sub-License Agreement"), under which Owner was permitted to use certain HOOTERS® Marks in connection with conducting and promoting gaming at the Property. Section 13(b)(v) of the Sub-License Agreement automatically terminates all licenses to Owner in the event the Franchise Agreement terminates.

**C. Termination of the Franchise and Owner's Promise to De-Identify**

23. By a Notice of Non-Renewal dated August 4, 2025, signed by Matthew Pendleton as Authorized Signatory, Owner notified HOA Franchising that it would not renew the franchise. In that notice, Owner represented that it "shall commence

and complete the de-identification process of all premises, products, and materials previously associated with Franchisor," including "the removal of all signage, branding, and any other proprietary identifiers of the Franchisor," and that it "will complete this de-identification process within thirty (30) days from the effective date of the notice of non-renewal."

24. Franchised operations at the Restaurant ceased, and the franchise terminated, on August 7, 2025. Owner's right to use the HOOTERS® Marks ended on that date. Under Section 15.3 and Special Stipulation 54, the Restaurant was required to be fully De-Identified by no later than August 17, 2025, and exterior building and monument signage by no later than August 22, 2025.

**D. Defendants' Continued, Unauthorized Use of the HOOTERS® Marks After Repeated Notice**

25. On July 29, 2025, Hooters sent a cease-and-desist letter to OYO Hotel and Casino and to the General Counsel of OYO Hotels and Homes, notifying them that an online hiring announcement for the Property used Hooters' registered trademarks and identified the Property as "Hooters Casino Hotel," and demanding that they cease and desist from any further use of the HOOTERS® Marks. The July 29, 2025 letter is attached hereto as Exhibit 1.

26. On August 6, 2025, counsel for "OYO Hotel & Casino Las Vegas" responded that the posting had expired and represented that OYO "never had any intention of using the HOOTERS marks and that it has no intention of using those

marks moving forward." Defendants therefore had actual knowledge of Hooters' rights in the HOOTERS® Marks no later than July 29, 2025.

27. Notwithstanding these representations and the termination of the franchise, Defendants did not de-identify the Property. As documented in photographs taken on or about July 21, 2026, Defendants continued to display the HOOTERS® Marks, trade name, and trade dress throughout the Property, including on exterior façade signage, monument signage, building branding, architectural features, and other visual elements, including a rooftop sign assembly reading "HOOTERS – WINGS – SHRIMP – BURGERS."

28. On July 22, 2026, Hooters sent a Final Notice Before Litigation to Defendants' counsel, to OYO Hotel and Casino, and to Owner's Authorized Signatory, demanding that Defendants immediately cease all use of the HOOTERS® Marks, remove all exterior and interior signage and trade dress, remove all digital references and marketing materials, direct third parties to remove infringing content, preserve evidence, and certify compliance within five (5) business days. The July 22, 2026 Final Notice is attached hereto as Exhibit 2.

29. On July 31, 2026, Hooters also sent a cease-and-desist and preservation demand to OYO Hotel & Casino's General Counsel (legal.us@oyorooms.com), notifying Defendants that the Property's website landing page and promotional social media content prominently featured the Hooters name, trademarks, and

branding in a manner that falsely suggests an affiliation, sponsorship, endorsement, or continuing business relationship with Hooters, and demanding removal of all such content. The July 31, 2026 letter is attached hereto as Exhibit 3.

30. By letter dated July 31, 2026, Owner responded that it "has no intention of using, or deriving any benefit from, the Hooters marks," that it was "blacking out the marks" on the monument signage, and that the rooftop assembly was "being scoped for removal." Owner further asserted that HI LP was responsible for removing and collecting the signage and that Owner would invoice HI LP for the cost of removal. Owner also asserted that the Property "is operated and managed by OYO Hotels Inc., a separate entity from Owner."

31. Hooters promptly rejected Owner's position in writing, explaining that Section 15 of the Franchise Agreement unequivocally places the obligation and cost of de-identification on the franchisee, and that Special Stipulation 54 merely extends the deadline for exterior signage by five days and does not shift financial responsibility to HOA Franchising or HI LP.

32. On August 14 and August 18, 2026, Plaintiffs' counsel asked Defendants' counsel to confirm whether it represents OYO Hotels. Defendants' counsel did not confirm or deny such representation.

33. On August 21, 2026, Plaintiffs' counsel sent a further demand letter to Owner and OYO Hotels, noting that more than one year had passed since termination

and that the front page of Defendants' own website at https://www.oyolasvegas.com/hotel/ prominently displayed an image featuring Hooters branding. The letter demanded, among other things, that Defendants cease all use of the HOOTERS® Marks, remove all exterior and interior signage (including the exterior façade signage, monument signage, rooftop assembly, and all building branding), remove all digital references to the HOOTERS® Marks, direct third parties to remove such content, preserve evidence, cancel any assumed name registrations containing "Hooters," and certify compliance with photographic evidence by August 26, 2026. A copy of the August 21, 2026 letter is attached hereto as Exhibit 4.

34. On August 27, 2026, Owner responded that the delay was "solely attributable to vendor scoping and to Clark County sign permitting requirements," and committed that "Owner will complete the de-identification process maximum by September 15, 2026." Owner further stated that it would notify Plaintiffs' counsel in writing within three (3) business days of any delay in issuance of a permit, with documentary evidence. Owner's response was made only on behalf of Owner, not OYO Hotels.

35. That same day, Plaintiffs' counsel responded that Owner had had more than one year to comply, requested evidence of Owner's communications with Clark

County, and confirmed in writing that HI LP would not collect the physical signage and that the signage should be removed and disposed of by Owner at its own cost.

36. Defendants did not complete de-identification by September 15, 2026. Defendants did not provide Plaintiffs with written notice of any permitting delay, or documentary evidence of any permit filing, as Owner had promised.

37. At least as of October 2026, the Property's website at https://www.oyolasvegas.com/hotel/ continued to display Hooters-branded imagery as its primary photograph, and several of Defendants' other sub-sites displayed Hooters-branded imagery.

38. On October 11, 2026, an independent investigator visited the Property and observed a HOOTERS® sign on the outside of the hotel building, including signage reading "HOOTERS" and "WINGS – SHRIMP – BURGERS," and a marquee referencing "HOOTERS SALOON" above the main valet entrance of the hotel. The investigator observed that the former Restaurant space was closed off behind a makeshift barrier. Property employees told the investigator that the Restaurant "went out of business in 2025."







39. Thus, as of October 11, 2026—more than fourteen months after the franchise terminated, and nearly a month after Owner's own self-imposed deadline—Defendants continued to display the HOOTERS® Marks prominently at the Property's exterior and main guest entrance, within its interior, and on Defendants' own website, in connection with Defendants' hotel, casino, and hospitality services.

**E. Harm to Hooters and the Public**

40. Defendants' use of marks identical to the HOOTERS® Marks in connection with the Property, where an authorized HOOTERS® restaurant formerly operated, is likely to cause, and on information and belief has caused, confusion, mistake, and deception among consumers as to whether the Property, its restaurant, and its services are affiliated with, sponsored by, or approved by Hooters. Continued use by a former authorized user creates an especially strong likelihood of confusion because the public reasonably believes that the Property remains affiliated with Hooters.

41. Consumers who see the HOOTERS® signage and "HOOTERS SALOON" marquee, or Hooters-branded imagery on Defendants' website, and who visit the Property expecting a HOOTERS® restaurant, instead find a closed and barricaded space. That experience is attributed to Hooters and damages Hooters' reputation and the goodwill associated with the HOOTERS® Marks, which Hooters can no longer control at the Property.

42. Defendants have used and continue to use the HOOTERS® Marks to attract consumers to the Property and its hotel, casino, and dining services, and, on information and belief, have derived revenue and other benefits from their continued association with the Hooters brand.

43. Defendants' conduct has been, and continues to be, knowing, deliberate, willful, and in bad faith. Defendants have had actual knowledge of Hooters' rights since at least July 29, 2025, have repeatedly acknowledged in writing that they have no right to use the HOOTERS® Marks, and have repeatedly promised and then failed to stop using them.

44. Hooters has no adequate remedy at law. Unless enjoined by this Court, Defendants' conduct will continue to cause irreparable harm to Hooters and to the public. Hooters is entitled to a rebuttable presumption of irreparable harm under 15 U.S.C. § 1116(a).

**FIRST CLAIM FOR RELIEF**
**Federal Trademark Infringement — 15 U.S.C. § 1114(1)**
**(By All Plaintiffs Against All Defendants)**

45. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 44 as if fully set forth herein.

46. Plaintiffs own, license, and/or have the authority to enforce the federally registered HOOTERS® Marks identified above, which are valid and subsisting.

47. Without Plaintiffs' consent, and after the termination of any license to do so, Defendants have used and continue to use in commerce reproductions, copies, and colorable imitations of the registered HOOTERS® Marks in connection with the sale, offering for sale, distribution, and advertising of goods and services,

including hotel, casino, restaurant, and hospitality services, at the Property and on Defendants' website, which use is likely to cause confusion, to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48. Defendants' acts of infringement have been committed with actual knowledge of Hooters' rights and are willful, deliberate, and intentional.

49. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer damages and irreparable injury to their business, reputation, and goodwill. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116, and to recover Defendants' profits, Plaintiffs' damages, enhanced damages, and the costs of this action under 15 U.S.C. § 1117(a). Because Defendants' infringement is willful, this is an exceptional case entitling Plaintiffs to their reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**False Designation of Origin and Unfair Competition — 15 U.S.C. § 1125(a)(1)(A)**
**(By All Plaintiffs Against All Defendants)**

50. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 49 as if fully set forth herein.

51. Plaintiffs own and have the right to use and enforce the HOOTERS® Marks, including the HOOTERS® name, owl design, and HOOTERS® restaurant trade dress, which are distinctive and have acquired secondary meaning.

52. Defendants' unauthorized use in commerce of the HOOTERS® Marks, including on exterior signage, the "HOOTERS SALOON" marquee, and Defendants' website and marketing materials, constitutes a false designation of origin and a false or misleading representation of fact that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Hooters, and as to the origin, sponsorship, or approval of Defendants' goods, services, and commercial activities by Hooters, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

53. Defendants' conduct is willful, deliberate, and intentional.

54. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer damages and irreparable injury. Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 and to recover Defendants' profits, Plaintiffs' damages, enhanced damages, costs, and, because this is an exceptional case, reasonable attorneys' fees under 15 U.S.C. § 1117(a).

**THIRD CLAIM FOR RELIEF**
**Common Law Trademark Infringement Under Nevada Law**
**(By All Plaintiffs Against All Defendants)**

55. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 54 as if fully set forth herein.

56. Plaintiffs own valid and protectable common law rights in the HOOTERS® Marks in Nevada, which were used in Nevada long before Defendants' unauthorized use.

57. Defendants' unauthorized use of the HOOTERS® Marks after termination of the franchise is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of Defendants' goods and services, and constitutes trademark infringement under the common law of the State of Nevada.

58. Defendants' conduct was undertaken with knowledge of Plaintiffs' rights and with conscious disregard of those rights.

59. As a direct and proximate result, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial and irreparable harm for which they have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Common Law Unfair Competition Under Nevada Law**
**(By All Plaintiffs Against All Defendants)**

60. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 59 as if fully set forth herein.

61. Defendants' conduct described above, including their continued display of the HOOTERS® Marks at the Property and on their website after termination and with full knowledge of Plaintiffs' rights, constitutes passing off and an attempt to

trade on the goodwill and reputation of the HOOTERS® Marks, and constitutes unfair competition under the common law of the State of Nevada.

62. Defendants' conduct is likely to deceive and confuse the public and has misappropriated the benefit of the goodwill that Plaintiffs developed in the HOOTERS® Marks.

63. As a direct and proximate result, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, and Defendants have been unjustly enriched. Plaintiffs are entitled to injunctive relief and to recover their damages and Defendants' profits.

**FIFTH CLAIM FOR RELIEF**
**Breach of Contract — Franchise Agreement**
**(By HOA Franchising Against Owner)**

64. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 63 as if fully set forth herein.

65. The Franchise Agreement was a valid and enforceable contract between HOA Franchising and Owner, governed by Georgia law.

66. HOA Franchising performed all of its obligations under the Franchise Agreement, and all conditions precedent to Owner's post-termination obligations have occurred or been satisfied.

67. Owner materially breached, and continues to breach, the Franchise Agreement by, among other things:

(a) failing to immediately and permanently cease use of the Proprietary Marks, in breach of Section 15.2;

(b) failing to remove or change all signs, displays, and trade dress and to fully De-Identify the Restaurant within ten (10) days after termination (or, for exterior building and monument signage, within the additional five days provided by Special Stipulation 54), in breach of Section 15.3;

(c) failing to provide photographic or other evidence of De-Identification satisfactory to HOA Franchising, in breach of Section 15.3.2;

(d) failing to comply with its obligations regarding web sites and internet listings and to furnish confirmation of compliance within thirty (30) days after termination, in breach of Sections 9.5 and 15.4;

(e) continuing to hold out the Property to the public as associated with the Hooters System, in breach of Section 15.1; and

(f) using the Proprietary Marks in connection with another business in a manner that causes confusion and falsely suggests an association with HOA Franchising and the Hooters System, in breach of Section 15.5.

68. Owner's breaches are continuing. Each day that Owner fails to De-Identify the Property and continues to display the Proprietary Marks constitutes a new and separate breach of its post-termination obligations.

69. As a direct and proximate result of Owner's breaches, HOA Franchising has suffered damages in an amount to be proven at trial, including without limitation damage to its goodwill and the costs of investigating and enforcing Owner's obligations, and has suffered irreparable harm for which it has no adequate remedy at law. HOA Franchising is entitled to specific performance of

Section 15 and to injunctive relief, consistent with Section 25.6 of the Franchise Agreement.

70. Pursuant to Section 25.7 of the Franchise Agreement, as amended by Special Stipulation 59, HOA Franchising is entitled to recover its costs and expenses incurred in this proceeding, including reasonable accounting and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**Breach of Contract — Sub-License Agreement**
**(By Hooters Gaming Corporation Against Owner)**

71. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 70 as if fully set forth herein.

72. The Sub-License Agreement was a valid and enforceable contract between Hooters Gaming Corporation and Owner, governed by Nevada law.

73. Hooters Gaming Corporation performed all of its obligations under the Sub-License Agreement.

74. Owner materially breached, and continues to breach, the Sub-License Agreement by failing to cease use of the previously licensed HOOTERS® Marks at and after the time the Franchise Agreement (and with it, the Sub-License Agreement) terminated.

75. Owner's breaches are continuing. Each day that Owner fails to cease use of the previously licensed HOOTERS® Marks constitutes a new and separate breach of its post-termination obligations.

76. As a direct and proximate result of Owner's breaches, Hooters Gaming Corporation has suffered damages in an amount to be proven at trial, including without limitation damage to its goodwill and the costs of investigating and enforcing Owner's obligations, and has suffered irreparable harm for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs HI Limited Partnership, Hooters Gaming Corporation, and HOA Franchising, LLC respectfully request that the Court enter judgment in their favor and against Defendants 115 East Tropicana Avenue Owner Sub LP and OYO Hotels Inc., and award the following relief:

A. A judgment that Defendants have willfully infringed the HOOTERS® Marks in violation of 15 U.S.C. § 1114(1); have engaged in false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); have committed trademark infringement and unfair competition under Nevada common law; and that Owner has breached the Franchise Agreement and the Sub-License Agreement;

B. A permanent injunction, pursuant to 15 U.S.C. § 1116, Nevada and Georgia law, and the Franchise and Sub-License Agreements, enjoining Defendants and their officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors, and assigns, and all persons in active concert or participation with any of them, from: (i) using the HOOTERS® Marks, or any reproduction, copy,

colorable imitation, or confusingly similar mark, name, or trade dress, in connection with the Property or any goods or services, including on any signage, marquee, website, social media account, online listing, or marketing material; (ii) representing, directly or indirectly, that the Property or any of Defendants' goods or services are affiliated with, sponsored by, or approved by Hooters; and (iii) assisting, aiding, or abetting any other person in doing any of the foregoing;

C. An order requiring Defendants, within ten (10) days of entry, to remove at their own expense all exterior and interior signage, marquees, rooftop assemblies, displays, and trade dress bearing the HOOTERS® Marks from the Property, including the exterior façade signage, monument signage, the rooftop "HOOTERS – WINGS – SHRIMP – BURGERS" assembly, and the "HOOTERS SALOON" marquee; to remove all HOOTERS® Marks and Hooters-branded imagery from https://www.oyolasvegas.com/ and all other websites, social media accounts, and listings under their control; and to direct all third-party listing services, travel websites, job boards, and search engines to remove content using the HOOTERS® Marks in connection with the Property;

D. An order requiring specific performance of Owner's obligations under Section 15 of the Franchise Agreement, including full De-Identification of the Property and delivery of photographic evidence of De-Identification satisfactory to

HOA Franchising, and cancellation of any assumed name registrations containing "Hooters";

E. An order, pursuant to 15 U.S.C. § 1118, directing the delivery up for destruction of all signs, labels, marketing materials, and other articles in Defendants' possession or control bearing the HOOTERS® Marks;

F. An order, pursuant to 15 U.S.C. § 1116(a), requiring Defendants to file with the Court and serve on Plaintiffs, within thirty (30) days after entry of an injunction, a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

G. An award of Defendants' profits, Plaintiffs' actual damages, and the costs of the action pursuant to 15 U.S.C. § 1117(a), with damages enhanced up to three times and profits increased as the Court finds just;

H. A finding that this is an exceptional case and an award of Plaintiffs' reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), and an award of attorneys' fees and costs pursuant to Section 25.7 of the Franchise Agreement;

I. An award of compensatory damages for Defendants' violations of Nevada law and Owner's breaches of contract, in an amount to be proven at trial;

J. An award of pre-judgment and post-judgment interest at the maximum rate permitted by law; and

K. Such other and further relief as the Court deems just and proper.

Dated: November 12, 2026

Respectfully submitted,

**BARNES & THORNBURG LLP**

*/s/ Raanon Gal*
Raanon Gal
Georgia Bar No. 100281
3340 Peachtree Road NE, Suite 2900
Atlanta, GA 30326
Tel. (404) 264-4066
RGal@btlaw.com

Caitlin R. Byczko
(*pro hac vice* forthcoming)
11 South Meridian Street
Indianapolis, IN 46204-3535
Tel. (317) 231-7550
Caitlin.Byczko@btlaw.com

Brian S. Auerbach
(*pro hac vice* forthcoming)
222 Delaware Ave., Suite 1200
Wilmington, DE 19801
Tel. (302) 267-1514
Brian.Auerbach@btlaw.com

*Attorneys for Plaintiffs HI Limited Partnership, Hooters Gaming Corporation, and HOA Franchising, LLC*